**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Elena Z. Alfaro,<br>Plaintiff,<br>v.<br>Commissioner of Social Security Administration<br>Defendant. | No. CV-25-2942-PHX -DJH<br>**ORDER** |

Plaintiff Elena Z. Alfaro ("Plaintiff") seeks this Court's review of the Social Security Administration ("SSA") Commissioner's (the "Commissioner") denial of her application for disability insurance benefits. (Doc. 14). The matter is fully briefed. (Docs. 14, 16). Having reviewed the briefs and the Administrative Record (Docs. 10-1–10-10. "AR.") and for the reasons set out below, the Court concludes that this matter shall be remanded for further proceedings.

## I. Procedural Background

On December 18, 2020, Plaintiff filed an application for disability insurance benefits, alleging a disability onset of November 21, 2019.[1] (AR. 184). Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2020 ("date last insured"). (*Id.* at 185). Plaintiff's claim was first denied on June 7, 2022, with the

[1] Defendant previously applied for disability insurance benefits on April 5, 2017, alleging disability onset beginning December 9, 2015. (AR. 220). The application was denied initially, upon reconsideration, and following appeal to the district court in 2022. (*Id.* at 232).

ALJ finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 201). The Appeals Council granted Plaintiff's request for review on May 10, 2023, and remanded Plaintiff's case to the ALJ. (*Id.* at 15, 210–11). On remand, the ALJ conducted a telephonic hearing on February 29, 2024, and again issued an unfavorable decision on July 25, 2024. (*Id.* at 31). Thereafter, the Appeals Council denied Plaintiff's second request for review on June 27, 2025, adopting the ALJ's July 25, 2024 decision as a final agency action. (*Id.* at 1–3). After these denials, Plaintiff filed the present complaint with the Court on August 14, 2025. (*See* Doc. 1).

**II. The ALJ's Decision**

To determine whether a claimant is disabled under the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). First, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth step, where they determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines no such work is available, then the claimant is disabled. *Id.*

The ALJ first found that Plaintiff had not engaged in substantial gainful activity during the period from her onset date of November 21, 2019 through her date last insured of December 13, 2020. (AR. 17). Second, the ALJ determined that Plaintiff suffered from severe impairments of fibromyalgia, incipient degenerative disc disease, left knee effusion, depression, and anxiety. (*Id.* at 18). And at the third step, the ALJ concluded that Plaintiff

does not have an impairment or combination of impairments that met or medically equaled an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 4040. (*Id.*).

At step four, the ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except: The claimant was further limited to occasionally climb ramps or stairs but never ladders, ropes, or scaffolds. The claimant could occasionally balance, stoop, kneel, crouch, or crawl. The claimant could occasionally push or pull with the lower extremities. She could frequently handle, finger, or feel bilaterally. The claimant could occasionally reach overhead but frequently reach in all other directions bilaterally. The claimant must avoid work at unprotected heights or around dangerous moving machinery. The claimant must avoid concentrated exposure to loud noise or flashing lights in the work area. Mentally, the claimant is limited to work involving simple routine tasks. The claimant could occasionally interact with supervisors or coworkers but have no interaction with the public." (*Id.* at 20). Plaintiff was found unable to perform any past relevant work through the date last insured. (*Id.* at 29). Fifth and finally, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 30). As a result, the ALJ found that Plaintiff was not disabled under the Social Security Act from the alleged onset through the date last insured. (*Id.* at 31).

## II. Standard of Review

In considering whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*

To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum

of supporting evidence." *Orn*, 495 F.3d at 630. The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The ALJ is responsible for resolving conflicts, addressing ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.* at 954 (citations omitted).

## III. Discussion

Plaintiff contends that the ALJ erred in rendering its decision for the sole reason that the ALJ improperly rejected the medical opinion of Dr. Nasef, Plaintiff's treating rheumatologist. (Doc. 14 at 10–11).

### A. Medical Opinions

Plaintiff argues that that the ALJ failed to give reasons based on supportability and consistency for his rejection of Dr. Nasef's opinion and did not back his opinion with substantial evidence. (*Id.*) The Commissioner maintains that the ALJ reasonably discredited Dr. Nasef's opinion, based on its supportability and consistency, and backed his determination with substantial evidence. (Doc. 16 at 3–4).

An ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source" and "explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b)). The SSA regulations provide that the most important factors to consider when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability refers to

"the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

*Woods* makes clear that to properly reject a medical opinion under the substantial evidence standard, the ALJ "must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* (quoting 20 C.F.R. § 404.1520c(b)).

In rejecting the opinion of Dr. Nasef, the ALJ stated:

> In June 2020, Dr. Nasef, treating rheumatologist, opined that the claimant was limited to lifting 5 pounds, sitting for 2 hours total, and standing/walking for 2 hours total during a workday. In addition, the claimant could rarely reach, handle, or finger. Her fatigue would take her off task more than 15% of a workday. Dr. Nasef further opined that the claimants neck pain and headaches would result in work absences of twelve days a month (Exhibit B6F). The undersigned also considered Dr. Nasefs other similar post-date last insured less than sedentary medical opinions from April 2022 and June 2023 (Exhibits B22F, B25F).
>
> The undersigned finds that Dr. Nasef's opinions are unpersuasive upon making this decision because they are overly restrictive and extreme with a lack of supporting objective medical evidence cited. Dr. Nasef's opinion appears to have accepted the claimant's subjective allegations given the absence of supporting clinical findings. Upon comparison with the treatment record including Dr. Nasef's own treatment records (Exhibits B12F/12-21; B20F/30- 38, 42-51, 74-88), the physical examinations do not support extreme limitations of sitting for 2 hours total, for example. The claimant testified she spent her day sitting and watching television, contradicting Dr. Nasef's opinion. The mild imaging findings of the spine and knees further contradict Dr. Nasef's opinion, in addition to numerous physical examination findings within normal limits (Exhibits B4F/39, 49, 53-56, 60; B7F/11-13, 21, 62; B10F; B20F/26, 30, 42, 55, 61, 64, 71-73). Dr. Nasef's opinions are also inconsistent with other better supported opinions, such as the DDS determinations of a light residual functional capacity (Exhibits B2A, B5A). The record also shows a lack of frequent emergency room visits or inpatient hospitalizations, which would be expected if an individual was as limited as

> Dr. Nasef suggests, such as missing work more than 12 days per month and being off task more than 20% of a workday. The claimant has received primarily conservative, outpatient treatment, which has been effective in managing her symptoms.

(AR. 28–29).

Based on the above assessment, the Court concludes that the ALJ failed to support his decision to disregard Dr. Nasef's opinion with substantial evidence of lacking supportability and consistency.

To start, in assessing supportability, the ALJ found Dr. Nasef's opinion unpersuasive because it was "overly restrictive and extreme" and lacked "supporting objective medical evidence[.]" (*Id.* at 28). The ALJ stated that Dr. Nasef's opinion "appears to have accepted the claimant's subjective allegations given the absence of supporting clinical findings." (*Id.*) However, fibromyalgia has "no laboratory tests to confirm the diagnosis" and "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Thus, Dr. Nasef's reliance on Plaintiff's reported symptoms is expected. *Heather P. v. Kijakazi*, 2022 WL 1538654, at *7 (D. Or. May 16, 2022) (holding that the doctor's reliance on Plaintiff's subjective report of her fibromyalgia symptoms was expected under the supportability factor); *see also Pontzious v. Berryhill*, 2017 WL 6276371, at *4 (D. Ariz. Dec. 11, 2017) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003)) ("basing a medical opinion, at least in part, on the patient's subjective complaints 'hardly undermines [the] opinion as to [the patient's] functional limitations, as [a] patient's report of complaints, or history, is an essential diagnostic tool.'"). Additionally, an ALJ may not "assume that doctors routinely lie in order to help their patients collect disability benefits." *Davis v. Colvin*, WL 5730581, at *5 (D. Ariz. Sept. 30, 2015) (citing *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995), as amended (Apr. 9, 1996)). The ALJ also claims that Dr. Nasef's opinion is unsupported by his own treatment records. (AR. 28–29). However, the ALJ provides no insight into what these records say or how they undermine the supportability of Dr. Nasef's opinion beyond the following citation: "(Exhibits B12F/12-

21; B20F/30- 38, 42-51, 74-88)." (*Id.*) To reject a doctor's opinion because it is unsupported by the doctor's own treatment notes, an ALJ must "*discuss how* [the doctor's] treatment notes supported or did not support" their opinion. *Bogner v. Comm'r of Soc. Sec. Admin.*, 2023 WL 4734120, at *4 (D. Ariz. July 25, 2023) (emphasis added). Such discussion is necessary because "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *See Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943). The ALJ's lengthy citation lacks sufficient explanation, therefore, it does not meet the threshold of substantial evidence as to the supportability factor.

Next, in assessing consistency, the ALJ found Dr. Nasef's opinion unpersuasive because it was inconsistent with record evidence. (AR. 28–29). The ALJ explained that Dr. Nasef's opinion conflicts with claimant's "mild imaging findings" and "numerous physical examination findings within normal limits." (*Id.*) However, the ALJ provided no explanation of what these findings say or how they undermine the consistency of Dr. Nasef's opinion, beyond a long list of citations: "(Exhibits B4F/39, 49, 53-56, 60; B7F/11-13, 21, 62; B10F; B20F/26, 30, 42, 55, 61, 64, 71-73)." (*Id.*) An ALJ fails to meet the requirement of substantial evidence as to the consistency factor where the ALJ makes a "conclusory reference" to normal examination findings but "leaves the Court to sift through a string cite of examination findings" and determine how the evidence "relates to the supportability and consistency factors." *Harris v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1574980, at *4–6 (D. Ariz. Mar. 29, 2024); *see also Carrie D. v. Kijakazi*, 2022 WL 2901010, at *6 (E.D. Wash. June 6, 2022) (holding that the ALJ's general reference to normal clinical findings within the record and the lack of support from the doctor's treatment notes is "an insufficient explanation under Woods").

Similarly, the ALJ found Dr. Nasef's opinion inconsistent with "other better supported opinions" but then provides no explanation of how these opinions are better supported or what they say, beyond the following citation: "(Exhibits B2A, B5A)." (*Id.*) An ALJ does not provide substantial evidence as to the consistency factor where the ALJ's

explanation consists of a conclusory citation to the record and does not “identify any specific piece of medical evidence in the record that contradicted [the doctor’s] opinions.” *Townsend v. Comm'r of Soc. Sec. Admin.*, 2022 WL 3443678, at *9 (D. Ariz. Aug. 17, 2022). In sum, the ALJ’s use of conclusory language and vague citations fail to meet the threshold of substantial evidence as to the consistency factor.

Finally, in the Answering Brief, the Commissioner provides potential examples from the record to support the ALJ’s supportability and consistency findings. (Doc 16 at 4–11). However, “[l]ong-standing principles of administrative law require us to review the ALJ’s decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.” *Bray v. Comm’r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009); *see also Cline v. Comm’r of Soc. Sec. Admin.*, 2024 WL 4262782, at *3 (D. Ariz. Sept. 23, 2024) (holding that “attempts to salvage the decision after the fact are ineffective.”).

**B. Harmless Error**

An ALJ decision will not be reversed for errors that are harmless. *Stout v. Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990)). However, a reviewing court cannot consider an error harmless “unless it can confidently conclude that no reasonable ALJ … could have reached a different disability determination.” *Id.* at 1056. In other words, legal errors are harmless only if they are inconsequential to the non-disability decision. *Id.* at 1055.

Here, the Court is unable to conclude that the ALJ’s failure to state legally sufficient reasons for discounting Dr. Nasef’s medical opinion was harmless. The ALJ’s RFC determination necessarily relied on the ALJ’s rejection of Dr. Nasef’s opinion. Moreover, the failure to consider factors as required by regulations has been determined to be reversible error. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). In consequence, the ALJ’s error was not harmless. *E.E. v. Kijakazi*, 2022 WL 2954331, at *10 (N.D. Cal. 2022) (deciding that an ALJ’s failure to address supportability was an error warranting remand).

**IV. Remand**

Once a court has determined an ALJ's decision contains harmful error, it maintains discretion to remand the case for additional proceedings or for an award of benefits. *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998) (citing *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). This is "the proper course, except in rare circumstances[.]" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Conversely, under the "credit-as-true" rule, the court has discretion to remand for an award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted).

Plaintiff argues her case meets the credit-as-true standard because there are no "significant factual conflicts," or "crucial questions as to the extent of [claimant's] impairment" that require resolution before a finding of disability. (Doc. 14 at 19 quoting *Treichler*, 775 F.3d at 1104–1105 (emphasis omitted)). However, the Court finds it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further analysis of Plaintiff's subjective symptom testimony and evaluation of the medical evidence are necessary before a proper determination of Plaintiff's disability can be made. Therefore, the Court, in its discretion, finds that a remand for further proceedings is appropriate here.

Accordingly,

**IT IS ORDERED** that Administrative Law Judge's July 25, 2024, decision is reversed and remanded for additional proceedings consistent with this Order.

/ / /

/ / /

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

Dated this 13th day of November, 2026.

Honorable Diane J. Humetewa
United States District Judge